IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**MANUEL ORTIZ** *et al.*,
    Plaintiffs,

v.

**TORO VERDE ECO ADVENTURE PARK** *et al.*,
    Defendants.

Civil No. 19-1972 (JAG/BJM)

## REPORT AND RECOMMENDATION

Plaintiffs Manuel Ortiz ("Manuel") and Diana Ortiz ("Diana") brought suit on behalf of themselves and their minor son, A.R.O. (henceforth "A"). Their other son Manuel Ortiz, Jr. ("Manuel Jr.") is also a plaintiff. Manuel, Diana, Manuel Jr., and A (collectively "Plaintiffs") accuse defendants Toro Verde Eco Adventure Park ("Toro Verde"), Universal Insurance Company, Oroverde Corp., Toro Verde Corp., Oro Verde, Inc., Berkeley Insurance Company, and other unnamed parties (collectively "Defendants") of negligence causing A to suffer physical and mental harm, and his family to suffer from emotional harm, when A crashed into a metal support beam on a zipline at Toro Verde. Docket No. ("Dkt.") 35. Plaintiffs request damages pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 and 31 L.P.R.A. § 5142, as well as costs and attorney fees. *Id*. at 10.

Plaintiffs moved for partial summary judgment on the issue of whether Defendants committed a breach of duty, Dkt. 57, and Defendants opposed, Dkt. 72. Defendants made a cross-motion for summary judgment, Dkt. 60, Plaintiffs opposed, Dkt. 70, Defendants replied, Dkt. 81, and Plaintiffs responded, Dkt. 83. The parties also submitted statements of fact in accordance with Local Rule 56. Dkts. 58, 60-1, 70-1, 72, 83. Plaintiffs' and Defendants' motions for summary

judgment were referred to me for a report and recommendation. Dkt. 84. For the reasons that follow, I recommend that both motions be **DENIED**.

## BACKGROUND

The following facts are drawn from the parties' Local Rule 56 submissions. In considering a motion for summary judgment, I construe the facts in the light most favorable to the nonmoving party. *See, e.g.*, *In re Oak Knoll Assocs., L.P.*, 835 F.3d 24, 29 (1st Cir. 2016). Since the parties have made cross-motions for summary judgment, I present versions of the facts as they are alleged by both parties here, noting where the parties differ; I shall then construe the facts in favor of Defendants when considering Plaintiffs' motion for summary judgment and in favor of Plaintiffs when considering Defendants' motion. I have omitted portions of the proposed facts that state conclusions of law or that I deem irrelevant for the purpose of addressing these motions.

On July 19, 2019, the day of the alleged accident, A was eighteen years of age. Dkt. 60-1 at ¶ 2. On July 19, around 12:55, A, his parents, and his brother, Manuel Jr., arrived at Toro Verde. Dkt. 58 at ¶ 1. Toro Verde is an amusement park located in Orocovis, Puerto Rico. *Id*. at ¶ 2. Toro Verde offers several different types of "tours," including a zipline course. *Id*. The zipline course consists of eight separate zipline cables. *Id*. at ¶ 3. The last segment of this ride ("Cable Eight") is where the accident took place. *Id*.

Manuel Jr. and A decided to ride the zipline course after arriving. Dkt. 60-1 at ¶ 4. Plaintiffs do not dispute that Diana and Michael voluntarily authorized A to do so. *Id*. at ¶ 5; Dkt. 70-1 at ¶ 5. Defendants claim that both Diana and Manuel registered A for the zipline course. Dkt. 60-1 at ¶ 6. However, Plaintiffs state that while Diana was registering A and Manuel Jr., Manuel, A, and Manuel Jr. were walking around the area and looking at a map of the park. Dkt. 70-1 at ¶ 6. Though Manuel stated that he and his wife "registered" their children for the ziplines, Dkt. 70-3 at 20, ll.

4–5, Manuel later explained that he understood registration to consist of his wife and children buying tickets and identifying themselves to staff, Dkt. 70-3 at 27. Plaintiffs further claim that Manuel was not given any documents and that he did not sign anything. Dkt. 70-1 at ¶ 6. Meanwhile, Defendants claim that prior to A riding the course, Diana signed an electronic document titled "Participation, Waiver, Assumption of Risk, Hold Harmless and Release from Liability Agreement" ("the agreement") on A's behalf. Dkt. 60-1 at ¶ 7. Plaintiffs respond by stating that Defendants are unable to sufficiently support this claim via witness testimony, that Diana has testified that she signed a tablet but that she was not shown the agreement, and that A has testified that he did not see or sign the agreement or see his mother signing any agreement. Dkt. 70-1 at ¶ 7.

The contents of the agreement are not in dispute. The agreement states to "read this document carefully before signing" and says that "you are assuming risks related to extremely dangerous activities and waiving your legal rights." Dkt. 60-1 at ¶ 8. The agreement also states: "I agree and accept that this document, and any claim, suit, litigation or legal proceeding related to the same shall be subject to and interpreted exclusively in accordance with the laws of the Commonwealth of Puerto Rico, and that any such proceeding shall be carried out exclusively in the state courts of the Commonwealth of Puerto Rico." *Id*. at ¶ 9. It goes on to note: "If any part of this agreement is held void, illegal or is declared without legal effect by a court of law, the enforceability, legality and applicability of the remaining provisions set forth herein shall not be in any way affected or limited." *Id*. The agreement also says that "with my signature I certify that I have read and understood this document in its entirety" and follows up by stating that "I am aware of the risks I am assuming and of the rights I am waiving, and I voluntarily accept this agreement in its entirety, without objection or any limitation whatsoever." *Id*. at ¶ 10.

The agreement also includes the following disclaimers:

> WARNING: Canopy tours, rappelling activities, hiking tours, zip lining, suspension bridge crossings, bicycle rides, ropes courses, slides, observation towers, rock climbing and other activities offered by [Toro Verde] and/or Oroverde, Corp. ("Oroverde"), as well as the mere presence in their premises are EXTREMELY DANGEROUS ACTIVITIES (collectively, the "ACTIVITIES"), and inherently and inevitably involve serious risks of (i) temporary or permanent and/or complete or partial mental, emotional and/or physical injury, illness, cuts, overexertion, bruises, abrasions, paralysis, incapacity, dismemberment and death; (ii) accidents or illness in remote or inaccessible areas that lack medical facilities and/or immediate medical attention; (iii) property loss or damage; (iv) equipment and/or infrastructure malfunction; and (v) other risks , damages or injuries related or inherent to the activities (collectively, "RISKS AND INJURIES").

*Id*. at ¶ 11. The agreement further says that "I affirm that I voluntarily wish to participate in the 'activities', which inevitably carry 'risks and injuries', and I acknowledge and certify that to me these 'activities' are not necessary, essential or important in any way." *Id*. at ¶ 12.

Diana and Manuel stayed in the park's shopping area while A and Manuel Jr., decided to ride the zipline course. Dkt. 58 at ¶ 4. Here, the accounts of Plaintiffs and Defendants diverge again. Plaintiffs claim that, after A's first zipline ride, the Toro Verde employees started to have trouble controlling his speed on the ziplines, and that when A was sent down the ziplines he would go too fast. *Id*. at ¶ 7. However, Defendants counter that, in a deposition, A testified under oath that he experienced no problems with braking or controlling his speed on the first seven ziplines. Dkt. 72 at ¶ 7. Plaintiffs claim that Cable Eight consisted of one departure platform, one receiving platform, and two stacked cables suspended between the departure platform and the receiving platform; the top cable was supposedly "redundant" while the bottom cable was the cable used to transfer the zipline riders between platforms. Dkt. 58 at ¶ 5. Defendants state that the idea that the top cable was "redundant" is an opinion and not a fact and that factual issues remain regarding the nature of the other cables, as Plaintiffs' evidence of their nature is supposedly limited to expert

testimony that relies upon photos, videos, and an inspection of the premises rather than personal knowledge. Dkt. 72 at ¶ 5.

Plaintiffs further claim that A was severely injured when the Cable Eight's brake system and receiving guide failed to stop him upon his arrival at the receiving platform and he crashed into a metal support beam at the end of the line. Dkt. 58 at ¶ 9. They allege that the metal support beam was not covered with a shock-absorbing material that could adequately deal with the anticipated impact. *Id*. They also claim that, at the time of the accident, Toro Verde did not have a fully functioning dual braking system installed on Cable Eight, and that the combination of a failed capture block-braking system and a faulty emergency braking system constituted a defective braking system that failed to stop A before he slammed into the canopy steel beam. *Id*. at ¶ 10. In response, Defendants state that these claims are subject to genuine issues of material fact, that the claims rely wholly upon expert testimony that is not based upon personal knowledge and thus cannot be relied upon in considering a motion to dismiss, and that the claims constitute expert opinions about ultimate questions and are improperly conclusory in nature. *See generally* Dkt. 72.

Defendants claim that on the day of the incident, Toro Verde had "successfully passed" all third-party inspections certifying compliance with zipline industry and canopy tour industry standards, and that Emanuel Ortiz, Toro Verde's head Operations Manager, was a certified Association for Challenge Course Technology ("ACCT") Level 1 Professional Instructor. Dkt. 72 at 9. Plaintiffs respond that the evidence provided by Defendants in support of these claims only proves that Defendants passed an inspection in December 2019 (after the incident occurred) and that, likewise, Emanuel Ortiz became a certified instruction after the incident occurred. Dkt. 83 at 4–5. Further, Plaintiffs contend that Emanuel Ortiz was absent from Toro Verde on the date of the accident. *Id.*

On October 15th, 2019, Plaintiffs filed the present complaint seeking damages for alleged physical and emotional injuries suffered as a result of A's accident at Toro Verde's facilities. 60-1 at ¶ 1. Because A was a minor at the time the complaint was filed, his mother and father (plaintiffs Diana Ortiz and Manuel Ortiz) brought suit on his behalf. *Id*. at ¶ 3.

## APPLICABLE LEGAL STANDARDS

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood" upon conflicting evidence, no matter how reasonable those ideas might appear. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). "To defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993) (quoting *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993)).

## DISCUSSION

Plaintiffs and Defendants have made cross-motions for summary judgment. Plaintiffs move for partial summary judgment, claiming that they have sufficiently established they can satisfy at least one element of their negligence claim. Defendants move for "full" summary judgment, claiming that Plaintiffs knowingly signed a document with a forum selection clause in it stating that all claims related to the document "shall be carried out exclusively in the state courts of the Commonwealth of Puerto Rico" and that as a result, Plaintiffs can only raise the present claim in state court.

Defendants oppose Plaintiffs' motion by stating that there is still a fact issue as to whether Defendants committed a negligent or intentional act or omission. Defendants also refer to the arguments they make in favor of their own motion for summary judgment as precluding Plaintiffs' claims. Plaintiffs oppose Defendants' motion by claiming that Plaintiffs never actually had the opportunity to review the contract; that minors cannot be bound to contracts except in special circumstances; and that even if the injured party was unable to sue under the contract, that would not prevent the rest of his family from suing, since they did not agree to the contract's terms.

As stated above, when considering a motion for summary judgment, I construe the facts in favor of the non-moving party. Since both parties have moved for summary judgment, I shall

alternatingly construe the facts in favor of Defendants when considering Plaintiffs' motion for summary judgment and shall construe the facts in favor of Plaintiffs when considering Defendants' motion for summary judgment.

Because Defendants dispute that this is the proper forum, I will first address Defendants' motion for summary judgment. Again, Defendants claim that Plaintiffs signed a contract containing a forum selection clause and that, as a result, Plaintiffs agreed in advance that claims against Defendants would be carried out exclusively in the state courts of the Commonwealth of Puerto Rico. Plaintiffs oppose Defendants' motion by stating that Plaintiffs never actually had the opportunity to review the contract; that minors cannot be bound to contracts except in special circumstances; and that even if A is unable to sue because of the contract, that does not prevent the rest of the family from suing since they did not agree to be bound by the contract's terms.

There is no dispute A was a minor at the time of the accident; the parties agree that he was. There also appears to be no dispute that Diana, A's mother, "signed" the agreement with A's name (although whether Diana realized she was signing the agreement, whether she signed the agreement itself, whether she was able to see the agreement before signing it, and whether she legitimately agreed to its terms are all disputed factors here). There does not appear to be any real dispute that, as Defendants claim, forum selection clauses are *prima facie* valid. There also does not appear to be any claim that the forum selection clause would fail to pertain to the circumstances at issue in this lawsuit if it proves to be valid.

With these facts in mind, I shall first address whether Defendants can show that A may be bound to this contract even though he is a minor, his mother signed the contract on his behalf instead of him signing it, and the contract contains a forum selection clause. Many other United States jurisdictions have considered similar issues and come to varying conclusions. *See, e.g.*,

Release or Compromise or Waiver by Parent of Cause of Action for Injuries to Child as Affecting Right of Child, 75 A.L.R. 6th 1 (collecting cases from courts in thirty-five states and territories and four federal circuits). Courts across different jurisdictions appear to be highly divided on the topic. *Id*.

Under 31 L.P.R.A. § 3376, "[n]o one can contract in the name of another without being authorized by him or without having his legal representation according to law," and "[a] contract executed in the name of another by one who has neither his authorization nor legal representation shall be void, unless it should be ratified by the person in whose name it was executed." The contract has clearly not been ratified by A, and as Plaintiffs argue, since A was a minor when Diana entered into the contract, he presumably could not have "authorized" her to contract on his behalf under 31 L.P.R.A. § 3402, which states that minors "cannot give consent" in a contractual setting; Defendants do not appear to allege otherwise. Thus, for the contract (including the forum selection clause) to be valid against A, Diana would have to have A's legal representation according to law. It appears that she does in at least one sense, as in Puerto Rico, "[a] father or mother with legal custody properly represents a minor in litigation." *Biaggi v. District Court of Ponce*, 68 P.R. 378, 380 (1948). Though it is not immediately clear that the power to properly represent a minor in litigation equates generally to "legal representation" over the minor, drawing such an equivalence would not strain credulity in the slightest. This court has also previously recognized parents as the "legal representatives" of children for the purpose of litigation, albeit without elaboration. *See, e.g.*, *Cruz-Martinez ex rel Cruz Fuentes v. Hosp. Hermanos Melendez, Inc.*, 5-CV-1328 (PG), 2007 WL 210432, at *2 (D.P.R. Jan. 24, 2007). It therefore seems that, in Puerto Rico, parents can contract in the names of their children as their legal representatives.

Furthermore, at least one prior case from this court indicates that the forum selection clause can be upheld as valid against A. Neither party has cited a Puerto Rico case that rules directly upon the issue of whether a parent can waive their child's right to sue over an injury they have suffered or will suffer. However, Defendants argue that in the present matter, the contract allegedly signed by Diana does not actually waive A's right to sue entirely, but instead contains a forum selection clause stating that litigation should proceed "exclusively in the state courts of the Commonwealth of Puerto Rico." Defendants aver that if the clause is valid, it would not waive A's right to sue, but would instead simply limit him to suing within a certain jurisdiction. In *Vega-Perez v. Carnival Cruise Lines*, 361 F. Supp. 2d 1 (D.P.R. 2005), this court found that in an incident where a minor injured himself while on a cruise with his grandparents, his parents could not bring suit on behalf of their child in Puerto Rico District Court because they had signed an agreement with a forum selection clause limiting all litigation against the cruise line to courts located in Florida. The opinion does not *explicitly* address the issue of whether a parent can validly sign a forum selection clause on behalf of their child; however, the case clearly demonstrates that doing so is possible. *See Burns v. Wilderness Ventures, Inc.*, No. 12-C-4188, 2012 WL 3779069, at *3 (N.D. Ill. Aug. 30, 2012) (suggesting that *Vega-Perez* stands for the notion that courts "distinguish between issues of waiver or exculpation and issues of forum selection or consent to arbitrate" while ultimately holding that a parent can validly agree to a forum selection clause on their child's behalf and that doing so does not waive their right to sue). Ignoring for the moment the issue of whether Diana validly signed the contract, Plaintiffs have not explained why the present circumstances differ from those in *Vega-Perez* in any meaningful way, and indeed, the cases appear to be fully analogous. It therefore appears that the forum selection clause could be upheld against A as valid if the contract itself is otherwise valid.

As a final note on this issue, Plaintiffs argue that under Puerto Rico law, both parents, not just one, must sign a contract on behalf of their child for it to be valid against the child. While Defendants claim that both Diana and Manuel registered A for the zipline course, Dkt. 60-1 at ¶ 6, Plaintiffs aver that Manuel was not present when Diana signed the contract at issue and was not aware of its contents. Dkt. 70-1 at ¶ 6. However, as Defendants note, the only support that Plaintiffs cite for this proposition is a single Spanish-language case, *Gil v. Marini*, 167 D.P.R. 553, 2006 WL 1074939 (2006), that deals specifically with 31 L.P.R.A. § 3554, a provision that governs marriage contracts of minors; Plaintiffs offer no sufficient justification for extending the seemingly focused and tailored logic of *Gil* beyond the apparently narrow holding in that case. Additionally, as noted above, a party can contract in the name of another if the party possesses legal representation over the other; Diana appears to possess legal representation over A, and there is no indication that *every* legal representative of a party must sign a contract on their behalf in order for it to be valid against that party. As a result, I do not agree that both parents must sign a contract on behalf of their child for the contract to be valid.

I next address whether Defendants have sufficiently shown that Diana (or Plaintiffs generally) legitimately agreed to the contract's terms or had a legitimate opportunity to review the contract before signing it. As noted above, Defendants claim that Diana signed the agreement at issue on A's behalf before A rode the zipline course, Dkt. 60-1 at ¶ 7; Plaintiffs respond by stating that Defendants are unable to sufficiently support this claim via witness testimony, that Diana has testified that she wrote A's name on a tablet when asked to do so but did not realize she was signing anything and was not shown the agreement, and that A has testified that he did not see or sign the agreement or see his mother signing any agreement. Dkt. 70-1 at ¶ 7. If Diana was never made aware of the contract, then she would be unable to consent to the contract's terms (as required

under 31 L.P.R.A. § 3391) and the agreement would arguably be *per se* invalid. *See, e.g.*, 31 L.P.R.A. § 3404 ("Consent given by error . . . or deceit shall be void.").

"Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment. Whether Diana saw or read the form before signing is a matter of credibility best determined by a jury. *See Benson v. Wal-Mart Stores E., L.P*, 14 F.4th 13, 32 (1st Cir. 2021) (finding whether a Human Resources Manager in an employment retaliation action read an employee's email complaining of discrimination that the employee said she sent him to be "a matter of credibility best suited for a jury."). The *Benson* court observed that, if the Human Resources Manager never read the email complaining of discrimination, he could not have taken retaliatory action based on that complaint. *Id*. Presented with testimony that the Manager received the email, and his statements that he could not recall receiving the email, the *Benson* court determined that a jury must evaluate the employee and Manager's credibility to determine whether the Manager's knew the email's contents. *Id*. Here, given testimony that Toro Verde showed Diana the waiver containing the forum selection clause on an iPad, and Diana and A's statements that neither saw the waiver nor had any reason to know of its existence, a jury must likewise evaluate the relevant witnesses' credibility to determine whether Diana knew of the waiver's existence.

Defendants argue that Diana had the opportunity to review the contract but "chose" not to do so. It is unclear what evidentiary source Defendants rely upon in making this claim. Moreover, Diana's testimony conflicts with this claim, as Diana has averred that she was not told about the contract's existence before signing the tablet with A's name. Similarly, Defendants argue that it may be assumed that Diana agreed to the contract's terms because she "undisputedly signed the

agreement and provided all the rest of the contact information" contained therein, and that this is sufficient evidence for the court to find that the terms of the agreement were "reasonably communicated" to Plaintiffs. However, Defendants repeatedly fail to account for Diana's claim that she was never shown the document at all and simply thought that she was providing A's name to Defendants by writing on an otherwise blank screen. Defendants acknowledge that Diana provided A's name electronically but persist in citing cases in which paper agreements were signed by hand in positing that a signature attached to a contract is *de facto* reliable. The nature of the facts as they are espoused by Diana entirely differentiates the present case from pen-and-paper contract cases, as it cannot be safely assumed that Diana had the opportunity to read the contract when she simply wrote on a tablet's screen as opposed to signing at the bottom of a paper copy of the agreement.

For example, in a dispute over the enforceability of a fitness center's arbitration agreement, a court held the agreement unenforceable, though Plaintiff provided his signature on a tablet, because Plaintiff expressly stated that he was never presented with the agreement, nor informed of it, before signing. *Briones v. Fitness Int'l, LLC*, No. SACV 16–44, 2016 WL 10957953, at *4 (C.D. Cal. Aug. 5, 2016). Contrasting Plaintiff's explicit denial of seeing the agreement with the fitness center's general statement that it believed the agreement was executed per its procedure of reviewing the terms on a screen with the customer, the *Briones* court held that the fitness center failed to demonstrate an agreement to arbitrate. *Id.* Here, similarly, Diana has expressly stated that she was never shown the waiver containing the forum selection clause and Toro Verde has responded by stating its normal procedure of displaying the agreement on the tablet was followed. Likewise, without evidence that Diana was aware of the agreement before signing, Toro Verde fails to establish Diana's agreement to the forum selection clause.

Because Plaintiffs raise material issues of fact requiring the evaluation of various witnesses' credibility, I recommend finding that a genuine issue of fact remains as to whether Diana legitimately agreed to the contract's terms or had an opportunity to review the contract.

Finally, Defendants are correct that A's family would not be able to sue Defendants in this court if the contract's forum selection clause bars A from doing so. *See Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 24 (1st Cir. 2009) (finding a surgery patient's wife bound by a forum selection clause in her suit for emotional distress resulting from the patient's injuries when only the patient signed the agreement). However, since the forum selection clause in this case may be invalid, A's parents and brother can proceed with their actions based on their emotional harms.

I now turn to Plaintiffs' motion for summary judgment. Again, Plaintiffs claim that they have sufficiently established they can satisfy at least one element of their negligence claim. Defendants counter by stating that there is still a fact issue as to whether Defendants committed a negligent or intentional act or omission. Defendants also argue that the claims they make in their own motion for summary judgment preclude Plaintiffs' claims, but that argument fails for the reasons discussed above.

As Plaintiffs note, in order to prevail in making a general tort claim under Puerto Rico law, a plaintiff must establish the following elements: "(1) evidence of physical or emotional injury, (2) a negligent or intentional act or omission (the breach of duty element), and (3) a sufficient causal nexus between the injury and defendant's act or omission (in other words, proximate cause)." *Vázquez-Filippetti v. Banco Popular de P.R.*, 504 F.3d 43, 49 (1st Cir. 2007) (citing *Tórres v. KMart Corp.*, 233 F. Supp. 2d 273, 277-78 (D.P.R. 2002)). Plaintiffs claim they can already establish part two of this test, or the breach of duty element.

Plaintiffs correctly note that negligence has two sub-elements: duty and breach. *Vázquez-Filippetti*, 504 F.3d at 49. "In most cases, the duty is defined by the general rule that one must act as would a prudent and reasonable person under the circumstances." *Id*. (citing *Ortiz v. Levitt & Sons of P.R., Inc.*, 1 P.R. Offic. Trans. 407 (1973)). Duty refers to an "obligation to anticipate and take measures against a danger that is reasonably foreseeable." *Woods-Leber v. Hyatt Hotels of P.R., Inc.*, 951 F. Supp. 1028, 1036 (D.P.R. 1996). This duty of care may arise "(1) by a statute, regulation, ordinance, bylaw or contract; (2) as the result of a special relationship between the parties that has arisen through custom; or (3) as the result of a traditionally recognized duty of care particular to the situation." *De-Jesus-Adorno v. Browning Ferris Indus. of P.R., Inc.*, 160 F.3d 839, 842 (1st Cir. 1998).

Regarding breach of duty, Plaintiffs state they can already establish that there was a negligent or intentional act or omission on the part of Defendants because their expert witness Dr. Farhad Booeshaghi concluded after an investigation that Toro Verde did not have a fully functioning dual-braking system installed on Cable Eight; that the emergency braking system was installed on the wrong line (the overhead line) and would not have provided any emergency braking capability to A; that the "capture block" braking system was not able to stop A's momentum; and that if all four "capture block" braking system pulleys were operating properly, then the force needed by the receiving guide to slow and stop A would have been less than 300 pounds. Plaintiffs further argue that Defendants have failed to disclose the identity of any expert witnesses who could testify as to these issues despite discovery proceedings closing at the end of last year; as a result, Plaintiffs say that Defendants cannot dispute the conclusions reached by Dr. Booeshaghi with expert witness testimony.

In their motion, Plaintiffs do not actually argue that Defendants breached any duty owed to Plaintiffs or negligently (or intentionally) committed any act or omission that is potentially related to any injury suffered by Plaintiffs. Plaintiffs' motion does not allege that Toro Verde "should" have had a dual-braking system installed on Cable Eight, that not having an emergency braking system in place is *per se* negligent, or that a "capture block" braking system ought to have been in place to stop A's momentum. Plaintiffs state that Cable Eight's combination of a failed "capture block" braking system and faulty emergency braking system constituted a defective braking system mechanism that failed to meet national standards and failed to stop A from being injured. However, Plaintiffs cite no actual standards supporting this assertion.

Plaintiffs do state, however, that Dr. Booeshaghi "unequivocally indicated" that A's injuries were caused directly by a defective braking system and the failure of Toro Verde to provide a fully functional braking system on Cable Eight. Indeed, in his report, Dr. Booeshaghi is far more explicit than Plaintiffs are in their motion regarding his opinion that Defendants violated industry standards and that A's injuries were the result. However, I have not yet determined Dr. Booeshaghi's testimony to be admissible. *See, e.g.*, *U.S. ex rel. Jones v. Brigham & Women's Hosp.*, 678 F.3d 72, 84 (1st Cir. 2012) (holding that the district court could not properly conduct summary judgment analysis without determining the admissibility of an expert report when claims from the report were arguably relevant to the outcome of the motion). Regardless, I need not determine the admissibility of Dr. Booeshaghi's report at this time, as even if Dr. Booeshaghi's report is admissible, the opinions that Dr. Booeshaghi offers in the report are not unassailable or undisputed despite Plaintiffs' claims.

On the contrary, Defendants argue that, while Dr. Booeshaghi's report makes repeated mentions of heavy rain, it fails to establish the amount of rain, its intensity, whether rain increases

the chance of a zipline accident, and what, if any, additional precautions Toro Verde was required to take as a result. Dkt. 72 at 18. Further, Defendants argue that Dr. Booeshaghi relies on inadmissible hearsay evidence, photographs and videos taken two years after the incident in question, and an on-site inspection also conducted two years after the incident. *Id.* at 3 – 9. Defendants assert Dr. Booeshaghi's report will function as a conduit for inadmissible evidence and that he lacks personal knowledge of the state of Toro Verde at the time of the accident.

As discussed, Plaintiffs point to no national standards for canopy and zipline courses and thus, Defendants claim, Plaintiffs cannot argue that Defendants violated any such standards. Dkt. 72 at 14–15. Instead, Defendants argue, as of the date of the accident, Toro Verde had successfully passed all third-party inspections certifying compliance with canopy and zipline tour industry standards. *Id.* at 15. Further, they state that Emanuel Ortiz, Toro Verde's head Operations Manager, was certified by the Association for Challenge Course Technology (ACCT) as a Level 1 Professional Inspector. *Id.*

Plaintiffs respond by correctly noting that Defendants' evidence only proves that Toro Verde had successfully passed a third-party inspection in December 2019, five months after the incident. Dkt. 83 at 4; Dkt. 72-5. Likewise, Plaintiffs argue that Emanuel Ortiz did not obtain his ACCT Level 1 Professional Instructor certification until March 2020. Dkt. 83 at 4; Dkt. 72-6. Further, Plaintiffs contend that regardless of his certification status, Emanuel Ortiz was not present at Toro Verde on the day of the accident. *Id.* at 5. Thus, Defendants' evidence fails to establish either that Toro Verde had successfully passed a third-party inspection or that a certified ACCT Level 1 instructor was present at Toro Verde on the day of the accident.

Moreover, Dr. Booeshaghi has stated that he has offered only a "preliminary" opinion, Dkt. 58-1 at 18, based in part on information he gathered from eyewitnesses whose statements partially

run counter to Defendants' stated version of the facts. Relatedly, and perhaps most importantly, the purported facts undergirding Dr. Booeshaghi's testimony have not been established sufficiently to support a finding that the opinions he expresses in his report are beyond dispute. The findings in Dr. Booeshaghi's report could clearly be legitimately disputed at trial.

Whether or not expert testimony is opposed by other experts, the weight that should be given to such testimony (as well as the issue of bias) is a question of fact for a jury even if the testimony is admissible. *See, e.g., Cruz-Vazquez v. Mennonite Gen. Hosp., Inc.*, 613 F.3d 54, 59 (1st Cir. 2010). Defendants have sufficiently shown that Dr. Booeshaghi's opinions could still prove to be incorrect because the facts underlying his opinions are disputed, he has couched his own opinions in equivocating language, and his opinion regarding Defendants' lack of conformity with industry standards is at least arguably in conflict with evidence offered by Defendants. Further, Plaintiffs have not otherwise shown that Defendants breached any duty of care owed to Plaintiffs. Therefore, I recommend finding that Plaintiffs are not entitled to summary judgment regarding Defendants committing a breach of duty.

## CONCLUSION

For the foregoing reasons, I recommend that the parties' cross-motions for summary judgment be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 26th day of August 2022.

                                            S/ *Bruce J. McGiverin*
                                            BRUCE J. MCGIVERIN
                                            United States Magistrate Judge